**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TENNESSEE**
**AT CHATTANOOGA**

| | | |
|---|---|---|
| **AMANDA BUCKALOO** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **Case No.: 1:26-cv-6** |
| | ) | |
| **v.** | ) | **JURY DEMAND** |
| | ) | |
| **EXETER FINANCE, LLC and** | ) | |
| **CARTER TOWING AND** | ) | |
| **REPO, LLC** | ) | |
| **Defendants.** | | |

---

**COMPLAINT**

---

**NOW COMES**, Plaintiff Amanda Buckaloo, by and through her Attorney Phillip S. Georges and brings this action against Defendants Exeter Finance, LLC ("Exeter") and Carter Towing and Repo, Inc. ("Carter"), pursuant 28 U.S.C. § 1331, pursuant to the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 et seq., Article 9 of the Tennessee Uniform Commercial Code, Tenn. Code § 47-9-101 et seq. and for intentional infliction of emotional distress, assault, battery, and negligence resulting in personal injury.

**PARTIES**

1. Plaintiff Amanda Buckaloo (hereinafter "Plaintiff") is a resident and citizen of the State of Tennessee. Process can be served to Plaintiff by and through her attorney of record.
2. Defendant Exeter Finance, LLC (hereinafter "Exeter") is a Foreign Limited Liability Corporation with a principal place of business at 2101 W. John Carpenter Fwy., Irving, TX

75063 and may be served by their registered agent Corporation Service Company, 2908 Poston Ave., Nashville, TN 37203.

3. Defendant Carter Towing & Repo, LLC (hereinafter “Carter”) is a Domestic Limited Liability Corporation with a principal place of business at 6320 Hwy. 58., Harrison, TN 37341 and may be served by their registered agent Megan Nicole Cantrell, 6320 Hwy. 58., Harrison, TN 37341.

## JURISDICTION AND VENUE

4. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331 because this action arises under the Constitution, laws or treatises of the United States and this Court has supplemental jurisdiction over Plaintiff’s claims that do not arise under federal law because each claim is “so related to claims in the action within this Court’s original jurisdiction that they form part of the same controversy under Article III of the United States Constitution.” 28 U.S.C. § 1367(a).

5. Venue is proper in this district pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims asserted in this action occurred in this judicial district.

## FACTUAL ALLEGATIONS

6. On February 15, 2020, Plaintiff purchased a 2017 Jeep Compass, VIN 1C4NJCBA7HD141260, (hereinafter “the Vehicle”), from Carmax and financed the purchase with Defendant Exeter Finance, LLC. See Ex. A (Retail Installment Contract).

7. The Plaintiff’s account number with Exeter is 1752485.

8. Plaintiff purchased the Vehicle for her own personal family and household use.

9. Plaintiff is allegedly obligated to pay a debt.

10. Plaintiff is a “consumer” as defined by 15 U.S.C. § 1692a(3).

11. The Vehicle constitutes "consumer goods" as defined by Tenn. Code § 47-9-102(a)(23).
12. Exeter is a company that regularly purchases consumer paper in the form of automobile loans.
13. In connection with the transaction, Plaintiff executed a loan agreement ("the Contract"), which granted a security interest in the Vehicle.
14. The Vehicle constitutes "collateral" as defined by Tenn. Code § 47-9-102(a)(12).
15. The Contract was assigned to Exeter.
16. Exeter is a "secured party" as defined by Tenn. Code § 47-9-102(a)(73).
17. Sometime later, Exeter engaged its repossession agent, Carter, to repossess the Vehicle.
18. Carter is a "debt collector" as defined by 15 U.S.C. § 1692a(6).
19. At all relevant times, Carter was acting as a repossession agent working at the behest of Exeter.
20. At all relevant times, Carter was an entity using instrumentalities of interstate commerce or the mails in a business the principal purpose of which is the enforcement of security interests.
21. On December 11, 2025, Carter located the Vehicle and attempted to repossess it.
22. Carter went to a business parking lot in Cleveland, Tennessee, where the Vehicle was parked.
23. Plaintiff was sitting inside the Vehicle, waiting for her husband to arrive.
24. Without warning, Carter attached a tow cable to the Vehicle while Plaintiff was still occupying it and pulled the Vehicle backward a short distance.
25. Plaintiff felt a jolt and initially believed she had been hit by another car.

26. This sudden and forceful jolt caused Plaintiff to suffer whiplash, resulting in physical injuries to her neck and back, including severe pain, stiffness, muscle strain, limited mobility, and other related harm requiring medical treatment, physical therapy, and ongoing care.

27. Plaintiff honked the horn and demanded that Carter's driver put the Vehicle down and cease the repossession.

28. Carter's driver refused Plaintiff's demands.

29. Plaintiff unequivocally protested the repossession.

30. There were witnesses to the incident who observed the events.

31. Despite Plaintiff's ongoing protests and her presence inside the Vehicle, Carter continued with the repossession over Plaintiff's unequivocal protest.

32. Upon information and belief, Carter did this to position the Vehicle for removal and to compel Plaintiff to cease her protests.

33. Plaintiff called the police for assistance.

34. Shortly thereafter, Cleveland police officers arrived on the scene.

35. The first officer advised that it was a civil matter and suggested Plaintiff leave until someone came for her.

36. Plaintiff refused, maintaining that the repossession was unlawful.

37. A second officer arrived and reviewed the situation.

38. Carter's driver claimed the action was a "property removal" and proceeded to hook another tow truck to facilitate the repossession.

39. The officers supported the repossession, despite Plaintiff's protests.

40. The officers placed Plaintiff under arrest for alleged disorderly conduct, even though she had not broken any law.

41. Plaintiff was required to post bail to be released from jail.

42. Fearing further escalation and under duress from the police involvement, the repossession proceeded, and Carter took possession of the Vehicle.

43. As a direct result of the unlawful repossession, the use of force while Plaintiff was inside the Vehicle, and the false arrest, Plaintiff suffered severe emotional distress, including but not limited to intense fear for her personal safety during the jolting of the Vehicle, humiliation from being arrested in public in front of witnesses, anxiety about her loss of transportation and potential legal consequences, sleep disturbances, and ongoing emotional trauma that has affected her daily life and relationships.

**THE FAIR DEBT COLLECTION PRACTICES ACT**

44. To protect consumers and ensure compliance by debt collectors, "the FDCPA is a strict liability statute." *McCollough v. Johnson, Rodenburg & Lauinger, LLC,* 637 F.3d 939, 948 (9th Cir. 2011).

Strict liability enhances "the remedial nature of the statute," and courts are "to interpret it liberally" to protect consumers. *Clark,* 460 F.3d at 1176. For the purpose of 15 U.S.C. § 1692f(6), a "debt collector" also includes "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the enforcement of security interests." 15 U.S.C. § 1692a(6).

45. The FDCPA prohibits such persons, such as tow operators or repossession companies, from taking any nonjudicial action to effect dispossession or disablement of property if there is no present right to take possession of the property. 15 U.S.C. § 1692f(6).

## THE UNIFORM COMMERCIAL CODE

46. "Article 9 of the UCC is a comprehensive statutory scheme governing the rights and relationships between secured parties, debtors, and third parties." *McCullough v. Goodrich & Pennington Mortg. Fund, Inc.,* 373 S.C. 43, 53, 644 S.E.2d 43, 49 (2007).

47. Article 9 serves "to provide a simple and unified structure within which the immense variety of present-day secured financing transactions can go forward with less cost and with greater certainty." *Haas' Estate v. Metro-Goldwyn-Mayer, Inc.,* 617 F.2d 1136, 1140 (5th Cir. 1980).

    After a default, the UCC gives secured parties the right to repossess collateral. See Tenn. Code § 47-9-609.

48. There is one restriction, however, which the law imposes upon this right. It must be exercised without provoking a breach of the peace; and, if a secured party finds that it cannot get possession without committing a breach of the peace, it must stay its hand, and resort to the law. *MBank El Paso, N.A. v. Sanchez,* 836 S.W.2d 151, 152 (Tex. 1992).

49. This is so because the preservation of peace, "is of more importance to society than the right of the owner of a chattel to get possession of it." *Willis v. Whittle,* 82 S.C. 500, 64 S.E. 410 (1909); see also *Singer Sewing Mach. Co. v. Phipps*, 49 Ind.App. 116, 94 N.E. 793 (1911) (quoting 3 William Blackstone, Commentaries *4) ("[T]his natural right of recaption shall never be exerted, where such exertion must occasion strife . . . or endanger the peace of society.").

## COUNT I
## VIOLATION OF 15 U.S.C. § 1692f(6)(A)
## CARTER

50. Plaintiff repeats and re-alleges each factual allegation contained above.

51. Tennessee law provides that secured parties may take possession of collateral without judicial action so long as there is no "breach of the peace." Tenn. Code § 47-9-609(b)(2).

52. However, if collateral cannot be repossessed without a breach of the peace, a party must get a court order to take possession of the collateral. Id.

53. A repossession agent breaches the peace if it continues with a repossession over a consumer's protest. See *Marcus v. McCollum,* 394 F.3d 813, 820 (10th Cir. 2004); *Dixon v. Ford Motor Credit Co.*, 72 Ill. App. 3d 983, 988, 391 N.E.2d 493, 497 (1979); *Hollibush v. Ford Motor Credit Co.,* 179 Wis. 2d 799, 812, 508 N.W.2d 449, 455 (Ct. App. 1993) ("We conclude that the undisputed fact is that Hollibush or her fiancé told FMCC's agent that he was not to repossess the vehicle, and that he nonetheless did so. We conclude that this constitutes a breach of the peace."); *Ford Motor Credit Co. v. Cole*, 503 S.W.2d 853, 855 (Tex. Civ. App. 1973), dismissed (Apr. 3, 1974) (because consumer protested repossession secured party was forced to either go to court or repossess vehicle at time when the consumer would not notice and protest); *Census Fed. Credit Union v. Wann,* 403 N.E.2d 348, 352 (Ind. Ct. App. 1980) ("[I]f [a] repossession is verbally or otherwise contested at the actual time of and in the immediate vicinity of the attempted repossession by the defaulting party or other person in control of the chattel, the secured party must desist and pursue his remedy in court."); *Firststart & Farmers Bank of Somerset, Inc. v. Henderson,* 763 S.W.2d 137, 140 (Ky. Ct. App. 1988) ("[I]t is clear that repossession in the face of the debtor's objection constitutes a breach of the peace."); *Morris v. First Nat. Bank & Tr. Co. of Ravenna,* 21 Ohio St. 2d 25, 30, 254 N.E.2d 683, 686 (1970); *Hopkins v. First Union Bank of Savannah,* 193 Ga. App. 109, 110, 387 S.E.2d 144, 146 (1989) (agreeing with most courts that repossession in the face of a debtor's oral protest constitutes

a breach of the peace); *Martin v. Dorn Equip. Co.,* 250 Mont. 422, 427, 821 P.2d 1025, 1028 (1991) (quoting J. Sheldon & R. Sable, Repossessions, § 6.3 (1988) ("[T]he general rule is that the creditor cannot . . . seize any property over the debtor's objections.")).

54. Plaintiff unequivocally protested the repossession.

55. Once Plaintiff protested the repossession, Carter lost the right to continue with the Repossession.

56. Nonetheless, Carter continued with its repossession and thereby breached the Peace.

57. A repossession agent's use of force is a breach of the peace. See *Brees v. Courtesy Ford, Inc*., 45 Fed. Appx. 711 (9th Cir. 2002) (shouting, pushing, shoving, and hitting consumer with car is breach of peace); *Scroggins v. City of Kankakee,* 2007 WL 2681235 (C.D. Ill. Aug. 16, 2007) (repossession that led to physical confrontation and required police intervention was breach of peace); *Pease v. Havelock Nat'l Bank*, 351 F. Supp. 118 (D. Neb. 1972); *Calloway v. Whittenton,* 52 U.C.C. Rep. Serv. 2d 525 (Ala. 2003) (use of physical force to overcome debtor's attempt to prevent repossession is breach of peace); *Griffith v. Valley of Sun Recovery & Adjustment Bureau, Inc.*, 613 P.2d 1283 (Ariz. Ct. App. 1980); *Kensinger Acceptance Corp. v. Davis,* 269 S.W.2d 792 (Ark. 1954); *Silverstin v. Kohler & Chase,* 183 P. 451 (Cal. 1919); Besner v. Smith, 178 A.2d 924 (D.C. 1962); *C.I.T. Corp. v. Brewer,* 200 So. 910 (Fla. 1941); C.I.T. Corp. v. Reeves, 150 So. 638 (Fla. 1933); *Thrasher v. First Nat'l Bank of Miami,* 288 So. 2d 288 (Fla. Dist. Ct. App. 1974); *McDowell v. Talcott*, 183 So. 2d 592 (Fla. Dist. Ct. App. 1966); *Roach v. Barclays-American/Credit Inc.,* 298 S.E.2d 304 (Ga. Ct. App. 1982); *Nicholson's Mobile Home Sales Inc. v. Schramm,* 330 N.E.2d 785 (Ind. Ct. App. 1975); *Singer Sewing Mach. Co. v. Phipps,* 94 N.E. 793 (Ind. Ct. App. 1911); *C.F. Adams Co. v. Saunders,* 66 S.W. 815 (Ky.

1902); *Van Wren v. Flynn,* 34 La. Ann. 1158 (La. 1882); *Strahan v. Simmons,* 15 So. 2d 164 (La. Ct. App. 1943); *Carter v. Mintz & Goldblum,* 8 So. 709 (La. Ct. App. 1931); *Bettis v. Singer Sewing Mach. Co.,* 10 Pelt. 273 (La. Ct. App. 1913); *Lambert v. Robinson,* 37 N.E. 753 (Mass. 1894); *Drury v. Hervey,* 126 Mass. 519 (1879); *Levi v. Brooks*, 121 Mass. 501 (1877); *Witcuke v. Presque Isle Bank,* 243 N.W.2d 907 (Mich. Ct. App. 1976); *Kirkwood v. Hickman,* 78 So. 2d 351 (Miss. 1955); *Spangler-Bowers v. Benton,* 83 S.W.2d 170 (Mo. Ct. App. 1935); *Bordeaux v. Hartman Furniture & Carpet Co.*, 91 S.W. 1020 (Mo. Ct. App. 1905); *Peddie v. Gally,* 95 N.Y.S. 652 (N.Y. App. Div. 1905); *Regg v. Gally,* 130 N.Y.S. 172 (N.Y. Sup. Ct. 1911); *O'Connell v. Samuel,* 30 N.Y.S. 889 (N.Y. Sup. Ct. 1894); *Lamb v. Woodry,* 58 P.2d 1257 (Or. 1936); *Reight v. Hamburger,* 81 Pa. Super. Ct. 571 (1923); *Harris Truck & Trailer Sales v. Foote,* 436 S.W.2d 460 (Tenn. Ct. App. 1968); *Godwin v. Stanley,* 331 S.W.2d 341 (Tex. Civ. App. 1959); *Henderson v. Security Nat'l Bank*, 72 Cal. App.3d 764, 140 Cal. Rptr. 388, 390-91 (1977).

58. By attaching a cable to the Vehicle and dragging it while Plaintiff occupied the Vehicle, Carter used force on the body of Plaintiff.

59. By using force on the body of Plaintiff during its repossession, Carter breached the Peace.

60. Additionally, summoning or enlisting the police to assist in a repossession constitutes a constructive use of force and is a breach of the peace.

61. By enlisting the police for assistance and/or to help in the repossession, Carter breached the peace.

62. A repossession agent's breach of the peace negates a right to possession. See *Thomas v. GM Fin. Co.,* No. 5:19-CV-1418-DAE, 2020 U.S. Dist. LEXIS 251551, at *12 (W.D. Tex. Mar. 18, 2020); *Clark v. PAR, Inc.*, No. CV1502322MWFFFMX, 2015 WL 13781846, at

*5 (C.D. Cal. July 22, 2015) (collecting cases); *Vantu v. Echo Recovery, L.L.C.,* 85 F. Supp. 3d 939, 943 (N.D. Ohio 2015); *Alexander v. Blackhawk Recovery & Investigation, L.L.C.*, 731 F. Supp. 2d 674, 680 (E.D. Mich. 2010); *Fleming-Dudley v. Legal Investigations, Inc.,* No. 05 C 4648, 2007 WL 952026, at *5 (N.D. Ill. Mar. 22, 2007); *Purkett v. Key Bank USA, Inc.*, No. 01 C 162, 2001 WL 503050, at *2 (N.D. Ill. May 10, 2001).

63. By continuing with the repossession after it lost the right to do so, Carter violated 15 U.S.C. § 1692f(6)(A) by taking non-judicial action to effect dispossession of Plaintiff's property where the property was exempt by law from such dispossession.

**COUNT II**
**VIOLATION OF TENN. CODE § 47-9-609(b)(2)**
**EXETER**

64. Plaintiff repeats and re-alleges each factual allegation contained above.

65. Tennessee law provides that secured parties may take possession of collateral without judicial action so long as there is no "breach of the peace." Tenn. Code § 47-9-609(b)(2).

66. However, if collateral cannot be repossessed without a breach of the peace, a party must get a court order to take possession of the collateral. Id.

67. A repossession agent breaches the peace if he continues with a repossession over a consumer's protest. See *Marcus v. McCollum,* 394 F.3d 813, 820 (10th Cir. 2004); *Dixon v. Ford Motor Credit Co*., 72 Ill. App. 3d 983, 988, 391 N.E.2d 493, 497 (1979); *Hollibush v. Ford Motor Credit Co*., 179 Wis. 2d 799, 812, 508 N.W.2d 449, 455 (Ct. App. 1993) ("We conclude that the undisputed fact is that Hollibush or her fiancé told FMCC's agent that he was not to repossess the vehicle, and that he nonetheless did so. We conclude that this constitutes a breach of the peace."); *Ford Motor Credit Co. v. Cole,* 503 S.W.2d 853, 855 (Tex. Civ. App. 1973), dismissed (Apr. 3, 1974) (because consumer protested repossession secured party was forced to either go to court or repossess vehicle at time

when the consumer would not notice and protest); *Census Fed. Credit Union v. Wann,* 403 N.E.2d 348, 352 (Ind. Ct. App. 1980) ("[I]f [a] repossession is verbally or otherwise contested at the actual time of and in the immediate vicinity of the attempted repossession by the defaulting party or other person in control of the chattel, the secured party must desist and pursue his remedy in court."); *Firststart & Farmers Bank of Somerset, Inc. v. Henderson,* 763 S.W.2d 137, 140 (Ky. Ct. App. 1988) ("[I]t is clear that repossession in the face of the debtor's objection constitutes a breach of the peace."); *Morris v. First Nat. Bank & Tr. Co. of Ravenna,* 21 Ohio St. 2d 25, 30, 254 N.E.2d 683, 686 (1970); *Hopkins v. First Union Bank of Savannah,* 193 Ga. App. 109, 110, 387 S.E.2d 144, 146 (1989) (agreeing with most courts that repossession in the face of a debtor's oral protest constitutes a breach of the peace); *Martin v. Dorn Equip. Co.*, 250 Mont. 422, 427, 821 P.2d 1025, 1028 (1991) (quoting J. Sheldon & R. Sable, Repossessions, § 6.3 (1988) ("[T]he general rule is that the creditor cannot . . . seize any property over the debtor's objections.")).

68. Secured creditors have a nondelegable duty not to breach the peace when they repossess secured collateral. The courts may find them liable for the acts of independent contractors who breach the peace in the course of repossessing secured collateral. See *Rand v. Porsche Fin. Servs.*, 216 Ariz. 424, 434, 167 P.3d 111, 121 (Ct. App. 2007) ("[W]e hold that the nondelegable duty exception applies to independent contractors hired to accomplish the self-help repossession of a motor vehicle."); Official Comment 3 to Tenn. Code § 47-9-609 ("In considering whether a secured party has engaged in a breach of the peace, however, courts should hold the secured party responsible for the actions of others taken on the secured party's behalf, including independent contractors engaged by the secured party to take possession of collateral"); see also *Doucette v. Belmont Sav. Bank,* No.

ESCV20161596D, 2017 WL 2427566, at *2 (Mass. Super. Apr. 14, 2017); *Binion v. Fletcher Jones of Chicago, Ltd.*, 2014 IL App (1st) 131710-U, ¶ 19; *Williamson v. Fowler Toyota, Inc.,* 1998 OK 14, 956 P.2d 858; DeMary v. Rieker, 302 N.J. Super. 208, 695 A.2d 294 (App. Div. 1997); *Robinson v. Citicorp Nat. Servs., Inc.*, 921 S.W.2d 52, 55 (Mo. Ct. App. 1996); *Mauro v. Gen. Motors Acceptance Corp.*, 164 Misc. 2d 871, 876, 626 N.Y.S.2d 374, 377 (Sup. Ct. 1995); *Clark v. Assocs. Commercial Corp.*, 877 F. Supp. 1439, 1448 (D. Kan. 1994); *Hester v. Bandy,* 627 So. 2d 833, 843 (Miss. 1993); *MBank El Paso, N.A. v. Sanchez,* 836 S.W.2d 151, 154 (Tex. 1992); *Sammons v. Broward Bank,* 599 So. 2d 1018, 1019 (Fla. Dist. Ct. App. 1992); *McCall v. Owens,* 820 S.W.2d 748, 752 (Tenn. Ct. App. 1991); *Massengill v. Indiana Nat'l Bank,* 550 N.E.2d 97, 99 (Ind. Ct. App.1990); *Nichols v. Metro.* Bank, 435 N.W.2d 637, 640 (Minn. Ct. App. 1989); *Gen. Fin. Corp. v. Smith*, 505 So. 2d 1045, 1047 (Ala. 1987); *Henderson v. Security Nat'l Bank*, 72 Cal. App.3d 764, 140 Cal. Rptr. 388, 390-91 (1977).

69. Exeter's repossession agent, Carter, breached the peace by continuing the repossession in the face of Plaintiff's loud and unequivocal protest.

70. Exeter violated Tenn. Code § 47-9-609(b)(2) when its repossession agent, Carter, breached the peace to repossess Plaintiff's Vehicle.

**COUNT III**
**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**
**CARTER and EXETER**

71. Plaintiff repeats and re-alleges each factual allegation contained above.

72. Under Tennessee common law, a claim for intentional infliction of emotional distress requires that: (1) the conduct of the defendants was intentional or reckless; (2) the conduct was so outrageous that it is not tolerated by civilized society; and (3) the conduct resulted in serious mental injury to the plaintiff.

73. Carter's actions, including attaching a tow cable to the Vehicle and dragging it while Plaintiff was occupying it, continuing the repossession despite Plaintiff's unequivocal protests and presence in the Vehicle, were intentional and/or reckless.

74. These actions were so outrageous in character and so extreme in degree as to go beyond all bounds of decency and to be regarded as atrocious and utterly intolerable in a civilized community.

75. As a direct and proximate result of Carter's conduct, Plaintiff suffered serious mental injury, including severe emotional distress as detailed above.

76. Exeter, as the principal that engaged Carter as its repossession agent, is vicariously liable for Carter's intentional and/or reckless conduct in the course of the repossession.

**COUNT IV**
**ASSAULT AND BATTERY**
**CARTER and EXETER**

77. Plaintiff repeats and re-alleges each factual allegation contained above.

78. Under Tennessee common law, assault is the intentional creation of a reasonable apprehension of imminent harmful or offensive contact, and battery is the intentional harmful or offensive contact with another person without consent or privilege.

79. Carter's actions, including attaching a tow cable to the Vehicle and suddenly jolting and dragging it backward while Plaintiff was occupying it, constituted an intentional harmful or offensive contact with Plaintiff's body through the Vehicle, without her consent.

80. These actions also created a reasonable apprehension in Plaintiff of imminent harmful contact, as evidenced by her initial belief that she had been hit by another car and her fear for her safety.

81. Carter's conduct was unprivileged and constituted a breach of the peace under Tennessee law.

82. As a direct and proximate result of Carter's assault and battery, Plaintiff suffered physical injuries to her neck and back, including whiplash, pain, stiffness, muscle strain, limited mobility, and required medical treatment, as well as emotional distress.

83. Exeter, as the principal that engaged Carter as its repossession agent, is vicariously liable for Carter's tortious conduct in the course of the repossession.

**COUNT V**
**NEGLIGENCE**
**CARTER and EXETER**

84. Plaintiff repeats and re-alleges each factual allegation contained above.

85. Under Tennessee common law, negligence requires a duty of care, breach of that duty, causation, and damages.

86. Carter owed Plaintiff a duty of reasonable care to avoid causing her harm during the repossession, including not using force or moving the Vehicle while she was occupying it.

87. Carter breached this duty by attaching a tow cable to the Vehicle and jolting and dragging it backward while Plaintiff was inside, in violation of Tennessee repossession laws and general standards of care.

88. As a direct and proximate result of Carter's negligence, Plaintiff suffered physical injuries to her neck and back, including whiplash, pain, stiffness, muscle strain, limited mobility, and required medical treatment, as well as emotional distress.

89. Exeter, as the principal that engaged Carter as its repossession agent, is vicariously liable for Carter's negligent conduct in the course of the repossession, and also negligently failed to ensure its agent conducted the repossession lawfully and safely.

**WHERFORE**, Plaintiff prays for the following relief:

1. The process and summons issue, as provide by law, requiring Defendants to appear and Answer Plaintiff's Complaint;

2. That service be had upon Defendants as provided by law;

3. That the Court award and enter a judgment in favor of the Plaintiffs and against the Defendants for compensatory and special damages in an amount that will fully compensate the Plaintiff;

4. Monetary awards provided to Plaintiff in the sum of One million dollars ($500,000.00);

5. For punitive damages sufficient to punish Defendants for their egregious conduct and to deter Defendants and others from repeating such atrocities in an amount of One Million dollars ($1,000,000.00);

6. Awarding Plaintiff statutory damages, pursuant to Tenn. Code § 47-9-625(c)(2);

7. Awarding Plaintiff statutory damages, pursuant to 15 U.S.C. § 1692k(a)(2)(A), in the amount of $1,000.00;

8. Awarding Plaintiff actual damages, including compensation for emotional distress and personal injuries, pursuant to 15 U.S.C. § 1692k(a)(1);

9. Awarding Plaintiff reasonable attorneys' fees and costs incurred in this action pursuant to 15 U.S.C. § 1692k(a)(3);

10. For the costs of litigating this case;

11. Plaintiff respectfully demands a jury of twelve (12) and reserves the right to amend this Complaint to conform to evidence as it develops;

12. All other relief, legal or equitable, that this Honorable Court deems just and proper.

Respectfully Submitted:
**PHILLIP S. GEORGES, PLLC**

Electronically signed by:
By: *<u>/s/ Phillip S. Georges</u>*
Phillip S. Georges, Esq.
SBN: 1056511
801 18th Ave. S

Nashville, TN 37203
Phone: 615-486-4115 x. 700
Fax: 615-576-8668
phil@wolfofjustice.com
*Attorney for Plaintiff*